# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**YOUSEF A. GILALI,**

   Petitioner,

   v.                                                              Case No. 19-CV-837

**WARDEN OF McHENRY COUNTY JAIL,**[1]

   Respondent.

## DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Yousef A. Gilali, who is subject to a final order of removal and is currently detained at the McHenry County Jail pending actual removal, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Gilali alleges his continued detention beyond six months is contrary to *Zadvydas v. Davis*, 533 U.S. 678 (2001). He seeks a writ ordering his immediate release. For the reasons stated below, the petition is granted.

## BACKGROUND

As an initial matter, at the time of filing this habeas petition, Gilali was detained at the Dodge County Detention Facility located in Juneau, Wisconsin. (Habeas Petition ¶ 1, Docket # 1.) Gilali was subsequently transferred to the McHenry County Jail in Woodstock, Illinois. (Docket # 3.) The respondent asserts that the court "may also consider whether this habeas petition is properly transferred on venue grounds to the Northern

---

[1] Gilali names multiple respondents in this case, including the Attorney General of the United States and the Secretary of the Department of Homeland Security ("DHS"). The proper respondent in a habeas action, however, is the person who has custody over Gilali. 28 U.S.C. § 2242. That person is the unnamed warden of the McHenry County Jail. Thus, I will substitute the Warden of the McHenry County Jail for the named respondents. All other named respondents are dismissed.

District of Illinois as the petitioner is no longer detained within the Eastern District of Wisconsin." (Resp. Br. at 1 n.2, Docket # 11.) Because a prisoner transferred while litigation is pending need not re-file in the new district, *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004), and Gilali was detained within the Eastern District of Wisconsin at the time his petition was filed, venue is proper in this district and I will not transfer Gilali's case to the Northern District of Illinois.

Gilali entered the United States without inspection at an unknown place and time. (Declaration of Michael Landmeier ("Landmeier Decl.") ¶ 6, Docket # 11-1.)[2] While Gilali asserts that he is a native and citizen of Morocco (Habeas Petition ¶ 6), the respondent states that Gilali's country of citizenship is unknown and Gilali has claimed to be a citizen of Libya, Morocco, and Iraq at various times (Landmeier Decl. ¶ 7).

On or about December 4, 1989, Gilali was ordered deported to Libya by an Immigration Judge in Buffalo, New York. (Landmeier Decl. ¶ 8.) The Immigration and Naturalization Service (the predecessor of DHS), was unable to obtain a travel document to Libya on Gilali's behalf. (*Id.* ¶ 9.) Thus, Gilali was released on an Order of Supervision on or about April 6, 1990. (*Id.*) On or about October 2, 2007, Gilali was taken into DHS custody pursuant to a detainer after he was arrested in Wisconsin for an unknown offense. (*Id.* ¶ 11.) On or about March 26, 2008, Gilali was again released on an Order of Supervision because DHS was unable to obtain a travel document on his behalf. (*Id.* ¶ 12.)

Gilali was again taken into DHS custody on March 29, 2011 after he was arrested in Wisconsin for a probation violation. (*Id.* ¶ 13.) Gilali was again released on an Order of

---

[2] The history of Gilali's immigration proceedings is taken from documents Gilali attached to his habeas petition and supporting brief and from the respondent's submissions, including the declaration of Michael Landmeier, a Deportation Officer for the Enforcement and Removal Office ("ERO"), Immigration Customs Enforcement ("ICE"), of the DHS.

Supervision on May 4, 2011 because DHS was unable to obtain a travel document for him. (*Id.* ¶ 14.) After facing criminal charges in 2016 and 2017, Gilali was again taken into DHS custody on or about November 2, 2017. (*Id.* ¶¶ 15–19.) The respondent asserts that ERO began actively seeking a travel document from Morocco and Libya after Gilali was taken into custody and on January 29, 2018, the ERO determined that Gilali would remain in custody while travel arrangements were made. (*Id.* ¶¶ 20–21.)

However, on or about February 2, 2018, the Libyan Consulate advised that it would not issue a travel document for Gilali because he was not a Libyan citizen. (*Id.* ¶ 22.) The Consulate advised ERO that Gilali's accent was Moroccan. (*Id.*) On June 12, 2018, ERO again determined that Gilali would remain in custody pending travel arrangements. (*Id.* ¶ 23.) On or about September 18, 2018, Gilali was interviewed by the Moroccan Consulate. (*Id.* ¶ 24.) While the respondent asserts that the Consulate informed ERO that Gilali was evasive in his answers and requested that the Consulate decline to issue him a travel document (*id.*), Gilali denies these assertions (Petitioner's Reply Br. at 5, ¶ 14, Docket # 12). Gilali argues that since his November 2017 detention, he has "availed himself multiple times at the Chicago field office for interviews with the deportation officer and has willingly offered information that he is from Morocco, the city of Casablanca." (*Id.*)

On or about September 18, 2018, ERO served Gilali with a Failure to Comply notice, stating that he failed to cooperate in obtaining a travel document. (Landmeier Decl. ¶ 25; Ex. C to Habeas Petition, Docket # 1-1 at 12.) On or about September 25, 2018, Gilali was served with a memo notifying him of his continued detention. (Landmeier Decl. ¶ 26.) Gilali then informed ERO that his father was born in Iraq. (*Id.*)

3

The respondent avers that on or about November 21, 2018, Gilali was again interviewed by the Moroccan Consulate and gave the Consulate false information—specifically, that he had a green card—and otherwise was uncooperative and declined to answer questions. (*Id.* ¶ 27.) Thus, the Consulate was unable to verify Gilali's citizenship at that time. (*Id.*) Gilali contests this assertion, stating that he truthfully told the consulate officer that he had been given a work permit that he had renewed annually since his removal order in 1989. (Petitioner's Reply Br. at 10, ¶ 20.) Gilali asserts that the DHS/ICE officer present at the interview knew about his work permit and could have corrected any misunderstanding on the part of the consulate officer. (*Id.*)

Gilali was subsequently served with Failure to Comply notices on January 7, 2019, February 4, 2019, March 25, 2019, April 19, 2019, and June 6, 2019. (Landmeier Decl. ¶ 28; Ex. C to Habeas Petition.) The respondent asserts that as of August 19, 2019, the requests for Gilali's travel documents remain pending with the Moroccan and Iraqi Consulates. (Landmeier Decl. ¶ 29.) ERO continues to follow up with the Consulates on the status of these documents and Gilali has only recently agreed to assist in that process. (*Id.*) Gilali contests that he only recently began cooperating with the removal process, stating that he has been fully cooperative throughout the entire process. (Petitioner's Reply Br. at 13, ¶ 27.)

I held a telephone conference with the parties on October 7, 2019. During the hearing, the respondent requested leave to provide an update as to the status of Gilali's travel documents. (Docket # 13.) On October 9, 2019, the respondent stated that ICE/ERO had informed counsel that it was initiating the process to release Gilali from detention. (Docket # 14.) However, on October 10, 2019, respondent clarified that ICE/ERO had only *recommended* that Gilali be released from detention pending removal and that ICE/ERO

believed that the Moroccan Foreign Ministry would provide an answer within the next few days about whether it will issue Gilali travel documents. (Docket # 15.) Another telephone conference was held on October 15, 2019. (Docket # 16.) The respondent stated that a release recommendation was now in place; however, because Gilali is in a failure to comply status, the respondent would not concur with the release recommendation. (*Id.*) The respondent could not, however, provide a reason as to why Gilali was in a failure to comply status. (*Id.*)

## LEGAL STANDARD

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

An alien ordered removed from this country generally must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). This is called the "removal period." *Id.* During that period, the alien must be detained. *Id.* § 1231(a)(2). If not removed within the removal period, the alien is normally to be released under the government's supervision. *Id.* § 1231(a)(3). However, the Attorney General may continue to detain him beyond the removal period if the alien presents a risk to the community or is unlikely to comply with the order of removal. *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (emphasis in original), the Supreme Court addressed "whether [the] post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." The Court determined that the

5

latter was the appropriate standard. *Id.* at 689. To find that the statute permitted indefinite detention would, in the Court's view, raise serious due process concerns. *Id.* at 690. Although the text of the statute says nothing about reasonableness, the Court read that limitation into it to avoid a collision with the Constitution. *See id.* at 690–98.

Thus, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In such a case, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Further, if removal is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

To provide clarity to later courts, the Court specified that a presumptively reasonable period of detention for purposes of removal should not exceed six months. *Id.* at 701. Once that period expires, and once the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The alien need not show "the absence of any prospect of removal—no matter how unlikely or unforeseeable," but merely that removal is not reasonably foreseeable. *Id.* at 702. Similarly, the government cannot rest solely on assertions of good-faith efforts to secure removal. *Id.* As the period of post-removal confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held

6

in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

## ANALYSIS

While Gilali has been detained most recently by DHS for twenty-two months, his removal history goes back almost thirty years. The statute provides that the ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1)(B)(i). As the respondent asserts, Gilali's Final Order of Removal was entered in December 1989. (Landmeier Decl. ¶ 8.) For reasons unexplained by either party, the December 1989 Order of Removal ordered Gilali deported to Libya, and when INS could not obtain travel documents for Gilali, he was ordered released on April 6, 1990. (*Id.* ¶ 9.) Gilali was convicted of sexual assault with a dangerous weapon on or about August 20, 1992. (*Id.* ¶ 10.) Although the record does not state if or for how long Gilali was incarcerated for the 1992 offense, the respondent asserts that Gilali was again taken into DHS custody on October 2, 2007 after he was arrested in Wisconsin for an unknown offense. (*Id.* ¶ 11.) It appears that no efforts were taken by the government during this fifteen-year period (between 1992 and 2007) to effectuate Gilali's removal. It was not until his 2007 arrest that efforts were again undertaken to remove Gilali, but once again, Gilali was ordered released in March 2008 because DHS could not obtain travel documents on Gilali's behalf. (*Id.* ¶ 12.)

The record indicates that no efforts were made to remove Gilali after March 2008 until he was arrested again in March 2011. (*Id.* ¶ 13.) Whatever efforts the government made at that time were unsuccessful, as Gilali was again released in May 2011 because DHS could not obtain travel documents. (*Id.* ¶ 14.) No effort, it appears, was taken from

May 2011 to secure Gilali's removal until after he was charged in two different Wisconsin counties for various offenses between September 2016 and September 2017. (*Id.* ¶¶ 15–18.) Only then did the ERO begin, in its own words, "actively seeking a travel document from Morocco and Libya" on Gilali's behalf. (*Id.* ¶ 20.) ERO asserts that it did not learn until February 2018 that Gilali was not a citizen of Libya when Libya refused to issue him travel documents. (*Id.* ¶ 22.) However, ERO did know that Morocco was Gilali's possible country of origin, as it was also seeking travel documents from Morocco in November 2017. (*Id.* ¶ 20.)

Gilali's current detention, going on twenty-three months, clearly surpasses the six-month presumptively reasonable period of detention articulated in *Zadvydas*. Gilali must still provide, however, good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. I find that Gilali has met his burden. As the court explained in *Mancera v. Kreitzman*, No. 16-CV-89, 2016 WL 1249600, at *3 (E.D. Wis. Mar. 29, 2016):

> *Zadvydas* involved challenges to § 1231(a)(6) by aliens ordered removed but not actually removed given the lack of any country willing to accept them or the lack of an extradition treaty or repatriation agreement with the would-be receiving country. 533 U.S. at 684. The aliens argued the government would never be able to remove them and they therefore would be permanently confined in civil immigration detention, which would violate due process. *Id.* at 685–86.

The respondent acknowledges that it still does not know Gilali's country of citizenship and that Morocco cannot verify his citizenship. (Landmeier Decl. ¶¶ 7, 27.) The respondent informed the Court on October 10, 2019 that ICE/ERO had recommended that Gilali be released from detention pending removal and that it believed that the Moroccan Foreign Ministry would provide an answer within the next few days about whether it will issue

8

Gilali travel documents. (Docket # 15.) However, the respondent informed the Court today that while a release recommendation was now in place, Gilali would not, in fact, be released because he was in "failure to comply" status. (*Id.*) The respondent still cannot say if and when travel documents are forthcoming. Despite almost thirty years passing since Gilali was ordered removed, the government has been unable to obtain the proper travel documents. It is unclear what has now changed that would make his removal likely in the reasonably foreseeable future. Gilali's situation is akin to that in *Zadvydas*—he is an alien ordered removed but has not actually been removed given the lack of any country willing to take him.

Because Gilali has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, it is up to the government to respond with evidence sufficient to rebut this showing. *See Zadvydas*, 533 U.S. at 701. The respondent's principal argument is that INA § 241(a)(1)(C) provides for the suspension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." (Resp. Br. at 8, Docket # 11 (quoting 8 U.S.C. § 1231(a)(1)(C).). The respondent argues that Gilali has only recently agreed to assist in the process of obtaining travel documents and has otherwise knowingly and actively hindered his removal from the United States. (Resp. Br. at 8.)

Gilali's alleged hinderance, however, rests primarily on his two interviews with the Moroccan Consulate in September and November 2018, where he allegedly gave evasive answers, stated that he wanted the Consulate to decline him travel documents, and falsely stated that he had a green card. (Resp. Br. at 4–5.) Even assuming all of these statements are

true, it is unclear how this thwarted the Moroccan Consulate's efforts to determine his citizenship. By at least September 12, 2018, Gilali provided DHS information regarding his date of birth, city of birth (Casablanca), country of citizenship (Morocco), and his parents' names and countries of birth. (Ex. B to Petitioner's Reply Br.) In a letter dated March 28, 2019 addressed to the Moroccan Embassy in Washington, D.C., Gilali stated that he is a citizen of Morocco and requested assistance with obtaining travel documents. (Ex. A to Habeas Petition.) Gilali again provided information regarding his date and place of birth and his mother's name and place of birth to "help you to identify me as a citizen/national of Morocco." (*Id.*) It is unclear what additional information the government believes Gilali withheld that would have helped verify his Moroccan citizenship. Nor could the respondent satisfactorily answer this question when asked at oral argument.

Admittedly, it is unclear from the respondent's submissions when the government first learned of Gilali's potential connection to Morocco. Perhaps Gilali never mentioned Morocco as a possible country of citizenship until recently (though he asserts otherwise). But the respondent has provided no evidence to support this. While it appears the attempt to obtain travel documents in early 1990 was directed at Libya (Landmeier Decl. ¶ 9), Landmeier's declaration is unclear whether the subsequent unsuccessful attempts between 1990 and 2017 were also directed at Libya. The respondent does assert, however, that Gilali has claimed citizenship of Libya, Morocco, and Iraq "throughout his lengthy immigration history" (*id.* ¶ 7) and the government had actively sought travel documents from both Morocco and Libya by November 2017 (*id.* ¶ 20). The respondent presents no evidence that Gilali's actions or inactions prevented the government from "actively seeking" travel documents until 2017. Thus, the respondent has not come forth with evidence sufficient to

rebut Gilali's showing that there is no significant likelihood of his removal in the foreseeable future. While the respondent asserts that Gilali's travel document requests with both the Moroccan and Iraqi Consulates remain pending and ERO continues to follow up on the documents' status (Landmeier Decl. ¶ 29), this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 702. For these reasons, Gilali's petition for a writ of habeas corpus pursuant to § 2241 is granted.

The Court orders that Gilali receive an individualized bond hearing within **ten (10) days** of the date of this Order. An Immigration Judge must determine whether Gilali should be released with conditions pursuant to 8 U.S.C. § 1231(a)(3) or should be detained because he is a risk to the community or unlikely to comply with the order of removal, pursuant to 8 U.S.C. § 1231(a)(6). Unless the Warden of the McHenry County Jail receives an order from an Immigration Judge determining that Gilali's continued detention is necessary under § 1231(a)(6), he must be released from custody.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Gilali's petition for a writ of habeas corpus (Docket # 1) is **GRANTED**. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day of October, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge